**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 1:24-2757-GLR** |
| **D.R. HORTON, INC.,** | * | |
| **Defendant.** | * | |

* * *

**MEMORANDUM OPINION**

BEFORE THE COURT is a Motion for Protective Order and Motion to Quash Subpoena filed by Plaintiff U.S. Equal Employment Opportunity Commission (the "EEOC"). ECF 46. D.R. Horton opposed, and the EEOC filed a reply. ECFs 51, 56. I have reviewed the parties' briefs and find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the Court GRANTS the Motion to Quash. A separate order shall follow.

## I. BACKGROUND

The EEOC filed this case against D.R. Horton, Inc., alleging unlawful discrimination by denying a disability-related accommodation request from its now-former employee, Afiya Watkins, and, as a result, constructively discharging her. *See* ECF 1 (Complaint). Around the time her employment with D.R. Horton concluded, Ms. Watkins sought new employment with Dream Finders, a competitor of D.R. Horton. Pl.'s Mem. in Supp. of Mot. at 1, ECF 46-1. Ms. Watkins' affiliation with Dream Finders was short-lived: it "hired [her] initially but rescinded the offer" before she performed any work

or received any compensation. *Id.*; *see also* Def.'s Opp'n at 1, ECF 51 (acknowledging that Dream Finders hired Watkins as a sales representative but "terminated her employment" after Watkins was hospitalized shortly after being hired).[1] Nonetheless, during discovery, Plaintiff produced Ms. Watkins' employment contract and earnings information related to the Dream Finders job. Pl.'s Mem. in Supp. of Mot. at 1, 7. During her deposition, D.R. Horton inquired "extensively" about Dream Finders. *Id.* at 1.

On June 2, 2026, D.R. Horton issued a subpoena to Dream Finders, seeking several categories of documents within any personnel or employment file Dream Finders maintained for Ms. Watkins. Def.'s Opp'n at 1. The subpoena, which the EEOC attaches to its Motion, requests:

> **Any and all** employment records (on-site, off-site, archived and/or microfilmed) which evidence the place of employment to include but not limited to, job titles and duties assigned at each place of employment, names of supervisors, evaluations, the dates and lengths of each employment, wage and hourly statements, records that evidence the rate of pay of overtime, tax information, documents concerning reasons for time missed from each place of employment, all documentation relating to health insurance and benefits, any and all records pertaining to or generated from the Employee Assistance Program, all documentation relating to disability benefits, any and all documentation relating to workers' compensation claims and any all records or materials regardless of origin related to the above-referenced individual.
>
> **Any and all** communications, whether electronic or paper, with the U.S. Equal Employment Opportunity Commission regarding, concerning, or pertaining to Afiya Watkins from November 1, 2022 to the present day.
>
> **Any and all** communications, whether electronic or paper, with the Maryland Commission on Human Rights regarding, concerning, or pertaining to Afiya Watkins from November 1, 2022 to the present day.

---

[1] When citing to the parties' briefs, this opinion uses the pagination noted at the bottom of the page rather than that of the header created by PACER and the Court's electronic filing system.

> **<u>Any and all</u>** communications, whether electronic or paper, with the Office of Human Rights of Prince George's County regarding, concerning, or pertaining to Afiya Watkins from November 1, 2022 to the present day.

ECF 46-2, at 5; *see also* Def.'s Opp'n at 2 (noting the subpoena's demand for "any and all communications Dream Finders may have had with the [EEOC] or another fair employment practices agency regarding, concerning, or pertaining to Watkins from November 1, 2022, to the present").

Before the subpoena's return date, the EEOC filed the pending Motion, seeking that the Court either (1) issue an order quashing the subpoena pursuant to Federal Rule of Civil Procedure 45(d)(3) or (2) issue a protective order setting aside the subpoena pursuant to Federal Rule of Civil Procedure 26(c)(1)(A).

## II. LEGAL STANDARD

"District courts enjoy substantial discretion in managing discovery[.]" *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of VA., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). As a general matter, Federal Rule of Civil Procedure 26(b)(1) establishes the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" The conjunctive in Rule 26(b)(1) stresses the Court's two primary considerations. First, the low bar of "*relevance*[,] not *admissibility*" at trial, dictates whether information is discoverable. *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 181 (D. Md. 1997) (emphasis in original); Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 6161708, at *3 (D. Md. Oct. 21, 2020) ("Discoverable evidence is broader than admissible evidence[.]" (internal quotation marks and citations omitted)); *see also*

*Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) ("Relevance is not, on its own, a high bar."). The standard at this step is whether there is "any possibility that the information sought may be relevant to the claim or defense of any party." *O'Malley v. Trader Joe's East, Inc.*, No. RDB-19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (internal quotation marks and citation omitted). Second, even where a party clears the low bar of relevance, the Federal Rules limit discovery based on "[p]roportionality[,] [which] requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *In re Verizon Wireless*, No. TDC-19-1744, 2019 WL 4415538, at *4 (D. Md. Sept. 16, 2019) (quoting *Jordan*, 921 F.3d 180, 188–89); *see also Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had."). In determining whether discovery is proportional, courts consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The proportionality analysis is "more demanding" when considering a subpoena to a non-party. *Jordan*, 921 F.3d at 189.

The party seeking a protective order bears the burden of establishing good cause for such an order based on "particular and specific demonstrations of fact" rather than "stereotyped or conclusory statements." *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 279 (D. Md. 2012) (internal quotation marks and citations omitted); *McNulty v. Casero*, No. SAG-16-2426, 2019 WL 5454900, at *3 (D. Md. Oct. 24, 2019) ("The party resisting discovery generally carries the burden to 'clarify and explain precisely why its

objections are proper given the broad and liberal construction of the federal discovery rules.'") (quoting *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005)).

## III. ANALYSIS

The Court will grant the EEOC's Motion and quash the subpoena. As explained below, the EEOC has standing to seek the relief sought, and the subpoena is overbroad and not proportional to the needs of this case when considering the claims and potential defenses, other discovery provided, and Dream Finders' status as a non-party.

### A. The EEOC has standing to seek an order quashing the subpoena.

As a threshold matter, the Court must determine whether the EEOC has standing to challenge the subpoena issued to non-party Dream Finders. *See, e.g.*, *Goldstein, et al. v. Hindle*, No. CJC-21-3124, 2025 WL 1928048, *3 (D. Md. July 14, 2025). Generally, a party lacks standing to challenge a subpoena issued to a non-party. *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 287 F.R.D. 377, 382 (S.D.W. Va. 2012). An exception to this rule arises where "'the party claims some personal right or privilege in the information sought by the subpoena.'" *Robertson v. Cartinhour*, No. AW-09-3436, 2010 WL 716221, at *1 (D. Md. Feb. 23, 2010) (quoting *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)); *see also Jason's Enters., Inc. v. Gen. Accident Ins. Co. of Am.*, Nos. 95-2553, 95-2554, 1996 WL 346515, at *5 (4th Cir. June 25, 1996).

"For purposes of standing to challenge a subpoena, the EEOC stands in the shoes of the employee on whose behalf it brings suit." *EEOC v. Bojangles' Restaurants, Inc.*, No. 5:16-cv-654-BO, 2017 WL 2889493, at *3 (E.D.N.C. July 6, 2017) (collecting cases). And several courts, including this one, have identified an employee's "personal right in the information contained in employment records" sufficient to confer "standing to challenge subpoenas directed to their former employers." *Singletary v. Sterling Transport Co.*,

*Inc.*, 289 F.R.D. 237, 239-40 (E.D. Va. 2012) (collecting cases); *Papanicolas v. Project Execution & Control Consulting, LLC*, No. CBD-12-1579, 2015 WL 1242755, at *1 (D. Md. Mar. 17, 2025) ("As in *Singletary*, Plaintiff here seeks to quash subpoenas requesting, *inter alia*, former employment records, and thus has standing to bring the Motion."). It follows, then, that the EEOC has standing to challenge the subpoena in this case.[2]

**B. The subpoena will be quashed.**

The EEOC argues that the Court should quash the subpoena or, in the alternative, grant a protective order because the subpoena seeks information protected by statute, is disproportionate to the needs of the case, seeks irrelevant information, and constitutes an invasion of Watkins' privacy, annoyance, embarrassment, and oppression. Pl.'s Mem. in Supp. of Mot. at 3-4.

The Court may quash a subpoena that, among other reasons, "requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The Court, however, "'must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare

---

[2] The briefs also address the EEOC's contention that statutory provisions imposing confidentiality on its communications with employers also provide standing to challenge the subpoena. *See* Pl.'s Mem. in Supp. of Mot. at 3. D.R. Horton insists that the EEOC's statutory reliance is misplaced because the cited statutes apply only to the EEOC's actions and do not prohibit a third party from producing material in response to a lawful subpoena. Def.'s Opp'n at 4. The Court need not address who has the better argument because even if D.R. Horton were correct, its argument would not alter or otherwise negate the generally applicable principles that establish the EEOC's standing as provided by the authority cited in this subsection.

D.R. Horton also argues that the EEOC lacks standing to make an undue burden argument in challenging the subpoena. *Id.* Having found standing exists for other reasons, and the ultimate conclusion not resting on issues of undue burden, the Court declines to address that argument.

the case.'" *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014) (quoting Fed. R. Civ. P. 26 advisory committee's note).

Alternatively, the Court may enter a protective order pursuant to Federal Rule of Civil Procedure 26(c). The Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Rule 26(c) imposes a high burden on movants: they must show 'good cause' by 'set[ting] forth specific and particular facts, rather than broad conclusory statements as to why a protective order should issue.'" *Santos v. Crowell*, No. GLR-15-3907, 2016 WL 6068082, at *3 (D. Md. Oct. 17, 2016) (quoting *Meents*, 302 F.R.D. at 377) (alteration in original). "[T]he court must balance the 'interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production.'" *Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. JFM-13-40, 2016 WL 632025, at *4 (D. Md. Feb. 17, 2016) (quoting *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988)).

Decisions from this Court and others in this circuit have long recognized that the analysis for whether to quash a subpoena pursuant to Rule 45 or issue a protective order pursuant to Rule 26(c) is essentially the same in this context. Read together, "Rules 26 and 45 provide that a court may quash a subpoena or issue a protective order in response to a subpoena if the individual or entity from whom discoverable information is sought would suffer an 'undue burden.'" *Santos*, 2016 WL 6068082, at *4. "'Although Rule 45 does not include . . . irrelevance as a reason[] to quash a subpoena, the grounds in Rule 45 are coextensive with the general rules governing discovery under Rule 26.'" *Id.* (quoting *Malibu Media, LLC v. Doe*, No. WDQ-14-0252, 2014 WL 2879326, at *2 (D. Md. June 23, 2014)). Because "the scope of discovery allowed under a subpoena is the same

as the scope of discovery allowed under Rule 26," Rule 45 recognizes the existence of an "undue burden" when a "'subpoena seeks information irrelevant to the case'" or is otherwise overbroad. *Singletary*, 289 F.R.D. at 240-41 (quoting *Cook v. Howard*, No. 11-1601, 2012 WL 3634451, at *6 n.7 (4th Cir. Aug. 24, 2012) (per curiam)); *see also Santos*, 2016 WL 6068082, at *4. Thus, whether to quash or to issue a protective order involves a distinction more about form than substance, should the Court conclude that discovery should be curtailed. *See Singletary*, 289 F.R.D. at 241 ("[R]egardless of whether the Court considers Plaintiff's Motion under Rule 45 or Rule 26, the Court must review Defendant's subpoenas under the relevancy standards set forth in Rule 26(b)."). If a movant has standing, the proper course of action is quashing the subpoena pursuant to Rule 45(d); if no such standing exists, the movant can obtain a protective order under Rule 26(c). *See id.* at 240 n.2; *In re Verizon Wireless*, 2019 WL 4415538, at *6.

The EEOC argues that the subpoena is overbroad and invasive because it calls for "any and all" information and "all records or materials regardless of origin." Pl.'s Mem. in Supp. of Mot. at 5. Relying on authority from within this circuit, the EEOC contends that the subpoena's call extends not only to relevant documents but also to information protected by statute, thus rendering the subpoena overbroad and, by definition, unduly burdensome. *Id.* at 5-7 (citing *Singletary*, 289 F.R.D. at 241 and *Pena v. Burger King Corp*, No. 12-248, 2012 WL 12547064, at *4 (E.D. Va. Sept. 21, 2012)). D.R. Horton counters that the EEOC fails to provide good cause or identify an undue burden justifying either form of the requested relief. Def.'s Opp'n at 8. D.R. Horton also emphasizes that whether Dream Finders paid Watkins to settle a separate EEOC investigation is relevant to its defense as well as Ms. Watkins' ability to recover damages in this case. *Id.* at 8-9.

Considering the specific circumstances of this dispute, the Court concludes that the EEOC has the better of the arguments. D.R. Horton's subpoena suffers many of the flaws that the EEOC asserts. First, it is overbroad in its request for "any and all" contents of a *different employer's* files without regard to what might be relevant to the claims, individuals, and circumstances in this case. *See Kovalenko v. Kirkland & Ellis LLP*, No. 22-cv-5990-HSG, 2024 WL 664691, at *4 (N.D. Cal. Feb. 16, 2024) (concluding that a subpoena for "absolutely everything in Plaintiff's post-law school personnel files [maintained by two non-party employers] without any regard for what might be relevant" was "amazingly broad"); *Lewin v. Nackard Bottling Co.*, No. CV 10-8041-PCT-FJM, 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010) ("[D]efendant's request to obtain plaintiff's entire personnel file from five former employers is, on its face, overbroad[.]").

Second, the subpoena seeks information that is either duplicative to what has been produced or otherwise disproportionate to the needs of this case. The parties spar about whether the subpoena is overbroad in seeking sensitive or irrelevant documents or other materials in the form of social security numbers, information about family members, medical information, and other documents irrelevant to this litigation. In *Singletary*, the Eastern District of Virginia concluded that subpoenas that "could lead to" production of an employment file containing these types of information were "overly broad on their face" in the context of allegations concerning unpaid overtime in violation of the Fair Labor Standards Act of 1938. 289 F.R.D. at 241-42 (citations omitted). The EEOC relies on *Singletary*'s language in support of its Motion. D.R. Horton asserts that *Singletary* supports its own position because the quashed subpoenas issued to employers who "had no connection" to the wage claims in that case and the court "contemplated that properly tailored subpoenas to other employers would be appropriate." Def.'s Opp'n at 10. In

addition, D.R. Horton notes that concerns about invasion of Ms. Watkins' privacy (e.g., in possessing sensitive personally identifiable information such as social security numbers) are unwarranted because it already has this information. *Id.* at 10-11. To the defendant's credit, it seems reasonable to conclude that medical- and disability-related records may have an inherent relevance in a reasonable accommodation case that is not inherent to an unpaid wages dispute. In that way, D.R. Horton may be correct insofar as it accuses the EEOC of invoking *Singletary*'s language without regard for its context, thus missing the forest for the trees. *Id.* at 11.

But D.R. Horton's arguments are double-edged swords that undermine its own contentions as much as—if not more than—they might cast doubt on the EEOC's views. For example, D.R. Horton insists that because Ms. Watkins "never began working for Dream Finders," the requested documents would not include any sensitive "payroll and tax information," and that she "never earned any wages unless Dream Finders paid Watkins a separation or settlement payment" involving issuance of tax forms. *Id.* As noted above, D.R. Horton also acknowledges that it already possesses personally identifiable information such as her social security number. *Id.* But the language that D.R. Horton insists is more "targeted" than *Singletary*'s request for "any and all documents" without limitation seeks the very things that D.R. Horton acknowledges would not exist (and that common sense indicates likely would not exist when someone is terminated before performing even a minute of work for an employer and receiving any compensation). Thus, it is difficult at first glance to adopt D.R. Horton's view that the language is thoughtfully tailored to the case.

What, then, are the relevant documents that exist, fall within the scope of the subpoena, and are not duplicative of information already in D.R. Horton's possession?

More importantly, what relevant documents exist in Dream Finders' personnel file (which does not sound substantial in volume under the circumstances) that are relevant, proportional, and unavailable from Ms. Watkins or the EEOC? Based on D.R. Horton's arguments, the answers to those questions seem to be documents reflecting whether Dream Finders settled any fair employment claims with Ms. Watkins, any communications between Dream Finders and the EEOC or its state- and local-level equivalents, and Ms. Watkins' application to Dream Finders that may (or may not) characterize her separation from D.R. Horton in a manner inconsistent with the allegations in this case.[3] *See id.*, at 8-12. None of these strike the Court as both relevant and proportional to the needs of this case. The existence of other discrimination claims or settlements does not appear relevant, as any claims against a different employer will involve different decisionmakers and personnel as well as the potential for other substantial differences in critical facts such as comparators and any burden in accommodating a request.[4] Even assuming relevance (and thus, discoverability) of

[3] D.R. Horton expressly declines to argue that the requested information is relevant to mitigation of damages, so the Court does not consider whether that would be sufficient to deny the EEOC's Motion. *See* Def.'s Opp'n at 12. The EEOC has already produced Ms. Watkins' employment contract with Dream Finders and information about Ms. Watkins' income. To the extent the subpoena sought such information, it has been provided and would be, in any event, available from a more convenient source than a non-party. *See* Fed. R. Civ. P. 26(b); *cf. Est. of Jenkins v. Am. Funds Distributors, Inc.*, No. LKG-21-03098, 2024 WL 5442361, at *4 (D. Md. Sept. 18, 2024) (issuing protective order where most topics listed in deposition notice were duplicative of information "already produced").

[4] Courts have declined to permit discovery regarding employment performance or complaints with non-party employers because the central issue at trial would be "what [the defendant] knew about the potential employee at the time of the alleged discrimination, not whether shortcomings surfaced at subsequent jobs." *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 3 (D. Mass. 2014); *see also Danzy v. CSX Transp. Inc.*, No. 5:23-cv-621-BO-BM, 2026 WL 660713, at *6 (E.D.N.C. Mar. 9, 2026) (issuing protective order where subpoena sought plaintiff's performance, disciplinary, and

employment complaints, discovery on the employee's discrimination claims against other, non-party employers "raises a significant trial within a trial concern." *Kovalenko*, 2024 WL 664691, at *8; *see also id.* (collecting cases that "quashed subpoenas seeking employment records . . . reasoning that such information would not lead to the discovery of admissible evidence" due to the evidentiary limitations imposed by Federal Rule of Evidence 404(a)). As *Kovalenko* aptly explains:

> [i]f Plaintiff did assert a claim of discrimination against one of her prior employers, what we could infer from that would seem to depend on what happened. If the claim was baseless, that could undermine her credibility in this case. But if it had merit, it would not undermine her credibility. Thus, even to figure out what inference could be drawn from a prior claim of discrimination, we would have to adjudicate the merits of some other dispute. **Going down this rabbit hole is not proportional to the needs of the case**.

*Kovalenko*, 2024 WL 664691, at *8 (quashing subpoena requests to non-party former employers for complaint, investigatory, and grievance files concerning, *inter alia*, complaints filed by the plaintiff with any government agency) (emphasis added).

While D.R. Horton does not articulate the exact same purposes or purported needs offered by the employer in *Kovalenko*, the dangers about the value of such information and concerns about proportionality are equally applicable. *Cf. E.E.O.C. v. Rexnord Indus., LLC*, No. 11-cv-777, 2012 WL 2525652, at *8 (E.D. Wis. June 29, 2012) (quashing subpoena seeking subsequent employer's disciplinary, termination, or grievances records and rejecting arguments that such records were relevant to whether the charging party

---

grievance records with other employers, finding such information irrelevant to any mitigation of damages defense). While the arguments before that court are not identical to those here, the observation in *Texas Roadhouse* underscores how the issues in the case at bar will rely on circumstances and decisions not informed by anything that happened with a subsequent employer. Thus, the Court holds substantial doubt that much of what D.R. Horton seeks regarding Dream Finders is even relevant.

was a disabled individual and experienced similar difficulties with subsequent employers). And they are equally convincing in this context, where the subsequent employer (to use the term loosely) terminated the charging party before she began working or received compensation. Considering the added emphasis on proportionality when considering non-party discovery, the Court finds D.R. Horton's pursuit unaligned with the needs of this case.

Of D.R. Horton's stated reasons for the subpoena, the only one that warrants further consideration is the mention of Ms. Watkins' application to Dream Finders. D.R. Horton contends this is discoverable because it should be permitted to know how Ms. Watkins' explained her departure to Dream Finders and whether she conveyed to Dream Finders any contention that her physician recommended she work within a 45-minute commute of her home. Def.'s Opp'n at 8. D.R. Horton avers that the EEOC "was asked to produce all documents relating to Watkins's effort to find employment and it did not produce her application to Dream Finders. Ostensibly this means that Watkins and the [EEOC] are not in possession or control of this document." *Id.* at 9. The EEOC counters by citing authority resisting discovery of employment records for the purpose of challenging credibility through an inconsistent statement to a subsequent employer. Pl.'s Reply at 3-4, ECF 56 (citing *Singletary*, 289 F.R.D. at 243, and then citing *Chamberlain v. Farmington Sav. Bank*, No. 3:06-cv-1437, 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007)).

Based on this record, the Court is not convinced there is a need to subpoena a non-party for any job application at this time. It is not clear that Ms. Watkins' post-separation description of that separation to another employer is relevant or proportional to the claims and defenses in this case. Even assuming it is relevant (and such statements exist),

the most convenient and least burdensome source of this information is Ms. Watkins herself or the EEOC. D.R. Horton's arguments do not reflect whether Ms. Watkins' deposition—which already occurred—involved questioning about the existence of an application to Dream Finders and what, if anything, she told Dream Finders regarding the nature of her separation from D.R. Horton or any medical recommendation regarding her commute. Having deposed her, D.R. Horton does not indicate whether it pursued this information in the deposition or whether any information obtained in deposition or other discovery suggests the existence (and relevance) of the information it suspects may appear in a subsequent job application. While the EEOC's discovery production did not include her application to Dream Finders—to the extent a physical application form exists or was used—the parties should explore this issue with one another before resorting to non-party discovery. *Cf. Kovalenko*, 2024 WL 664691, at *5 (concluding that although compensation from other employers was relevant to damages claims, the defendant "failed to show that it cannot obtain this information from Plaintiff" before issuing a subpoena to the other employers; defendant failed to show that "it made every effort to obtain that information from Plaintiff, including deposing her and bringing any necessary motions to compel"). If such discussions fail to reveal the contents of any job application to Dream Finders, D.R. Horton may be able to pursue a more narrowly tailored subpoena for this document. *See id.* If it chooses that path, D.R. Horton should be prepared to articulate how such information is both relevant and proportional.[5]

[5] While this narrow construction would not be as broad a request as the one rejected in *Singletary*, it is unclear to the Court why or how an after-the-fact statement on a job application to a subsequent employer (regarding the nature of separation from a previous employer) is relevant to whether a failure to accommodate or constructive discharge occurred in the prior employment.

For the reasons above, D.R. Horton's subpoena to Dream Finders will be quashed.[6]

## IV. CONCLUSION

For the foregoing reasons, the Motion to Quash (ECF 46) is GRANTED. A separate implementing order shall issue.

Date: September 1, 2026

/s/
Charles D. Austin
United States Magistrate Judge

[6] Having found sufficient basis for its conclusions as outlined above, the Court declines to address the parties' arguments about whether federal law governing the EEOC prohibits disclosure of material within the subpoena's scope.